# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ABBOTT DIABETES CARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-514 (GMS) |
| | ) | |
| v. | ) | |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPENING BRIEF IN SUPPORT OF DEXCOM, INC.'S MOTION (1) TO STRIKE THE COMPLAINT PURSUANT TO RULE 12(f), OR IN THE ALTERNATIVE, (2) TO CONSOLIDATE WITH C.A. NO. 05-590 (GMS) PURSUANT TO RULE 42(a), OR (3) FOR STAY PENDING REEXAMINATION OF THE PATENTS IN SUIT

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
Melanie K. Sharp (No. 2501)
John W. Shaw (No. 3362)
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6689
jingersoll@ycst.com

MORRISON & FOERSTER LLP
David C. Doyle (CA Bar No. 70690)
M. Andrew Woodmansee (CA Bar No. 201780)
Brian M. Kramer (CA Bar No. 201780)
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100
mawoodmansee@mofo.com

*Attorneys for Defendant DexCom, Inc.*

# TABLE OF CONTENTS

Page

I.    STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT ...................................1

II.   STATEMENT OF FACTS ...................................................................................................3

III.  ARGUMENT ......................................................................................................................4

      A.    Pursuant to Rule 12(f), Abbott's Complaint Should Be Stricken .............................4

            1.    The Court Has Discretion to Strike Redundant Claims Under Fed.R.Civ.P.
                  12(f).....................................................................................................................5

            2.    The August 16, 2006 Complaint Is Redundant of Claims
                  and Issues That Abbott Has Already Injected Into
                  C.A. No. 05-590 (GMS). .....................................................................................6

            3.    DexCom Will Be Prejudiced By Responding To Two
                  Separate Cases In This Court Alleging That The STS Device Infringes
                  Abbott's Patents....................................................................................................7

      B.    Alternatively, The Court Should Consolidate This Case With
            C.A. No. 05-590 (GMS). .............................................................................................8

      C.    Whether Or Not It Is Consolidated With C.A. No. 05-590 (GMS),
            The Court Should Stay C.A. No. 06-514 (GMS)......................................................10

            1.    The Relevant Factors All Weigh In Favor Of Staying
                  This Case.............................................................................................................10

            2.    A Stay Will Simplify Issues, Avoid Inconsistent Rulings and Conserve the
                  Resources of the Court and Parties. ...................................................................11

            3.    Courts Routinely Grant Stays At This Early Stage In The Proceedings. .........15

            4.    A Stay Will Not Prejudice Abbott. ....................................................................16

IV.   CONCLUSION.................................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D.N.J. 2003)..................................................................................8

*ASCII Corp. v. STD Entertainment USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994)...........................................................12, 14, 15

*Alloc, Inc. v. Unilin Dcor N.V.*, No. 03-253-GMS,
2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) .................................11, 12, 15

*Bausch & Lomb, Inc. v. Alcon Lab., Inc.*,
914 F. Supp. 951 (W.D.N.Y. 1996)............................................................................11

*Blake v. Farrell Lines, Inc.*,
417 F.2d 264 (3d Cir. 1969) .......................................................................................8

*Canady v. Erbe Elektronedizin GmbH*,
271 F. Supp. 2d 64 (D.D.C. 2002).............................................................................12

*Cedars-Sinai Med. Ctr. v. Revlon, Inc.*,
111 F.R.D. 24 (D. Del. 1986) ......................................................................................9

*Davidson v. John Deere & Co.*,
644 F. Supp. 707 (N.D. Ind. 1986) ..........................................................................6, 7

*Essex Group, Inc. v. Southwire Co.*, No. C-85-1923-A,
1986 U.S. Dist. LEXIS 29761 (N.D. Ga. Jan. 31, 1986).......................................10, 11

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) .................................................................................10

*Gioello Enterprises Ltd. v. Mattel, Inc., No. C.A. 99-375 GMS*,
2001 WL 125340 (D. Del. Jan. 29, 2001)..................................................................16

*Gonnocci Rev. Trust v. Three M Tool & Mach., Inc.*, No. 02-74796,
2003 U.S. Dist. LEXIS 24423 (E.D. Mich. Oct. 7, 2003) ..........................................11

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir.) ....................................................................................12, 14

## TABLE OF AUTHORITIES

Page(s)

*Hanes Cos., Inc. v. Ronson,*
    712 F. Supp. 1223 (M.D.N.C. 1988) ...........................................................................9

*Hewlett-Packard Co. v. Acuson Corp.,* No. C-93-0808 MHP,
    1993 U.S. Dist. LEXIS 6449 (N.D. Cal. May 6, 1993) .............................................12

*In re Laughlin Prods, Inc. Patent Litigation,*
    265 F. Supp. 2d 525 (E.D. Pa. 2003) .......................................................................15

*Lentek Int'l, Inc. v. Sharper Image Corp.,*
    169 F. Supp. 2d 1360 (M.D. Fla. 2001) ...................................................................15

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,*
    149 F.R.D. 65 (D.N.J. 1993) ...............................................................................8, 9

*Methode Elecs., Inc. v. Infineon Techs. Corp., No. C 99-21142 JW,*
    2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000) .........................................15

*Munie v. Stag Brewery,*
    131 F.R.D.559 (N.D. Ill.1989).................................................................................6

*Owens v. Blue Tee Corp.,*
    177 F.R.D. 673 (M.D. Ala. 1998).............................................................................5

*Patlex Corp. v. Mossinghoff,*
    758 F.2d 594 (Fed. Cir. 1985) ...............................................................................10

*Pegasus Dev. Corp. v. DirecTV, Inc.,* No. 00-1020-GMS,
    2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003)........................................10, 14

*Robert H. Harris Co. v. Metal Mfg. Co.,* No. J-C-90-179,
    1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991).......................................10

*Rogers v. Mount Union Borough,*
    816 F. Supp. 308 (M.D. Penn. 1993).......................................................................7

*Sulzer Inc. v. Black Clawson Co.,* No. 93 Civ. 8721,
    1995 U.S. Dist. LEXIS 8328 (S.D.N.Y. June 14, 1995) .........................................16

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.,*
    70 U.S.P.Q. 2d 1319 (N.D. Ill. 2004) ................................................................12, 15

## TABLE OF AUTHORITIES

Page(s)

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
  687 F. Supp. 832 (S.D.N.Y. 1988) ............................................................................6

*United States v. Dentsply International, Inc.*,
  190 F.R.D. 140 (D. Del. 1999) ..................................................................................9

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
  766 F. Supp. 212 (D. Del. 1991)..............................................................................11

*Werre v. Battenfeld Techs., Inc.*, No. 03-1471-AA,
  2004 U.S. Dist. LEXIS 23250 (D. Or. Nov. 9, 2004)..............................................15

*Whatley v. Nike, Inc.*,
  54 U.S.P.Q. 2d 1124 (D. Or. 2000) ..........................................................................12

### Statutes and Regulations

Fed. R. Civ. P. 12.................................................................................................... *passim*

Fed. R. Civ. P. 15.................................................................................................... *passim*

Fed. R. Civ. P. 42.................................................................................................... *passim*

### Other Authorities

Moore's Federal Practice 3d § 12.37...........................................................................5, 7

Moore's Federal Practice 3d § 42.10.............................................................................9

## I.    STAGE OF PROCEEDINGS AND SUMMARY OF ARGUMENT

On August 11, 2005, Abbott Diabetes Care, Inc. ("Abbott") sued DexCom, Inc. ("DexCom") for two counts of patent infringement, asserting four patents.  The Court dismissed one of those counts on August 16, 2006, and stayed the action (C.A. No. 05-590 GMS) while the United States Patent Office ("PTO") reexamines the four asserted patents.

On June 27, 2006, Abbott—without first seeking leave of Court—filed a supplemental complaint which attempted to add three more patents to that case.  The Court struck the supplemental complaint in its August 16, 2006 Order because Abbott failed to comply with Federal Rule of Civil Procedure 15(d).  D.I. 72 at p. 8 (holding that "because Abbott did not file a motion to supplement its complaint *in the present case*, the court will strike it from the docket for failure to comply with Rule 15(d)").  (emphasis added).

The Court's August 16, 2006 Order was clear:  Abbott may be entitled to add the three patents to its dispute with DexCom, but it must follow the procedure mandated by Rule 15(d) in order to do so.  Rather than file the required motion for leave under Rule 15(d), Abbott—on the very same day the Order was entered—filed a separate complaint for patent infringement premised on the same three patents it had injected into this case via its stricken June 27, 2006 supplemental complaint.  Abbott's "new" complaint is a transparent effort to circumvent the Court's order staying "the present case."

Pursuant to Fed. R. Civ. P. 12(f), the Court should strike Abbott's August 17, 2006 complaint in its entirety because it is redundant of claims that Abbott already injected into C.A. No. 05-590.  Although the original case is stayed, that does not excuse Abbott from the requirement it should have followed in the first place:  seek leave to file a supplemental complaint adding the three patents to this case.  However, because the case is now stayed, Abbott must wait until the Court lifts that stay before it files its motion for leave pursuant to Rule 15(d).

1

If the Court is inclined to deny this Rule 12(f) motion, then DexCom requests consolidation of this case with C.A. No. 05-590 pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.  Last month DexCom filed reexamination requests with the PTO as to each of the patents in Abbott's new case, C.A. No. 06-514.  On August 16, 2006, DexCom filed requests for reexamination of U.S. Patent No. 6,134,461 (the "'461 patent") and No. 6,990,366 (the "'366 patent") with the United States Patent Office.[1]  On August 16, 2006, DexCom filed a request to reexamine U.S. Patent No. 5,899,855 (the "'855 patent").[2]  DexCom requests that the Court stay this case pending the PTO's consideration of the requests for reexamination.

A stay is warranted for at least four reasons.  First, the PTO's own statistics demonstrate that it is highly likely the PTO will find invalid or substantially alter the claims of Abbott's asserted patents, thereby changing the legal issues in this case if not eliminating them altogether.  Second, because this motion comes at the earliest stage of litigation—less than 20 days after the Complaint was filed and before any schedule has been set or any discovery has been initiated—maximum conservation of resources will be realized by a stay.  Third, Abbott will not be unduly prejudiced by a stay, as the Court determined in its August 16, 2006 Order.  Finally, because this case should be consolidated with C.A. No. 05-590, which is stayed, it likewise should be stayed for that reason alone.

Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, patent claims will survive the reexamination process.  Because the administrative proceedings before the PTO may moot or resolve the issues presented in this new complaint, the law firmly recommends staying this action as a prudential matter pending conclusion of the PTO's review of the asserted patents.

---

[1]     True and correct copies of the requests for reexamination (without exhibits) are attached as Exs. A and B.

[2]     A true and correct copy of the request for reexamination is attached as Ex. C.

## II.    STATEMENT OF FACTS

On August 11, 2005, Abbott filed a Complaint (D.I. 1, "the original complaint")
against DexCom alleging patent infringement and seeking declaratory relief. Abbott
claimed that DexCom's STS system, once approved by the FDA, would infringe four
Abbott patents (collectively "the four original patents"). Those patents are now
undergoing reexamination before the PTO pursuant to DexCom's request. The PTO
determined that each reexamination request raised substantial questions about the validity
of all independent claims in the four original patents in light of previously undisclosed
prior art references. (*See generally* D.I. 46.)

DexCom filed a Motion to Dismiss the original Complaint (D.I. 5) as premature
because DexCom's STS system had not been approved by the FDA, may never have
been approved, and may have changed prior to approval. After continued dialogue
between DexCom and the FDA, DexCom ultimately received FDA approval and sold its
first non-experimental STS system around March 27, 2006 – more than seven months
after being sued by Abbott for patent infringement. DexCom also separately sought a
stay pending reexamination of the four original patents. (D.I. 25, 26, 39.)

Through a purported "Amended Complaint" filed on June 27, 2006, Abbott
accused DexCom's STS device of infringing three additional patents – Nos. 6,990,366;
5,899,855; and 6,134,461 ("the three new patents"). Abbott added the three new patents
to this case just five days before the parties were to begin the claim construction process
with the exchange of disputed claim terms. On July 12, 2006, DexCom moved to strike
Abbott's "Amended Complaint" on the grounds that it was a "supplemental" complaint
pursuant to Fed.R.Civ.P. 15(d) which required leave of Court before it could be filed and
served.

On July 21, 2006, DexCom sought the Court's assistance with the scheduling
issues arising from the introduction of the three new patents so close to the claim
construction deadlines. A telephonic conference was held, and the Court set an

"Amended Scheduling Order," which issued on August 3, 2006. The Court eliminated completely all dates related to dispositive motions in the original scheduling order to provide additional time for discovery and claim construction necessitated by the added complexity of the case following Abbott's attempt to add the three new patents. That amended order was necessitated by the introduction of the three new patents and all of their asserted claims.

On August 17, 2006, the Court entered its August 16 Order (1) dismissing Count I of Abbott's original complaint as premature, (2) staying C.A. No. 05-590 pending completion of reexamination proceedings in the Patent Office, and (3) striking Abbott's "Amended Complaint" for failure to comply with Fed.R.Civ.P. 15(d), holding that leave of Court was required for Abbott to add the three new patents to this case. *See* Ex. F. The very same day, rather than seek leave of Court as noted on page 8 of the Court's Order, Abbott filed an entirely new complaint based solely on the three new patents.

## III.   ARGUMENT

### A.   Pursuant to Rule 12(f), Abbott's Complaint Should Be Stricken

Abbott is again engaging in gamesmanship to avoid having its effort to harass a small competitor stayed while the PTO reexamines the validity of Abbott's recently acquired patents. By failing to seek leave of court when it first added the three new patents to this case on June 27, 2006, Abbott sought to evade the Court's authority to decide whether leave should be granted in light of DexCom's then-pending motion to dismiss and motion to stay the case in light of the PTO's reexamination of the four original patents. By filing a new, separate complaint rather than seeking leave to file a supplemental pleading under Rule 15(d), Abbott similarly seeks to circumvent the Court's order staying the present case. In its August 16, 2006 Order, the Court made clear that, because Abbott did not seek leave to file a supplemental complaint to add the three patents *to the present case,* the so-called "amended complaint" would be stricken. Abbott's August 17, 2006 Complaint, filed immediately after the Court's order, is

redundant of issues and claims it already has injected into C.A. No. 05-590. The Court

should strike the latest complaint pursuant to Rule 12(f). If Abbott wishes to add the

three new patents to its dispute with DexCom, the Court has made clear that the proper

vehicle to do so is a motion for leave to supplement the pleadings pursuant to Rule 15(d).

**1.    The Court Has Discretion to Strike Redundant Claims Under Fed.R.Civ.P. 12(f).**

A district court may strike any claim or matter that falls within the categories

enumerated in Rule 12(f), and decisions to strike such claims are reviewed for abuse of

discretion. *See* MOORE'S FEDERAL PRACTICE 3D § 12.37[1] (noting that a "ruling on a

motion to strike will be overturned on appeal only for an abuse of discretion"). Rule

12(f) of the Federal Rules of Civil Procedure provides:

> *Upon motion made by a party before responding to a pleading* or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, *the court may order stricken from any pleading . . . any redundant*, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f) (emphasis added). Abbott's August 17, 2006 complaint is

duplicative of the same allegations of infringement it made in its June 27, 2006 "amended

complaint" in C.A. No. 05-590. The newly-filed complaint should be stricken. If Abbott

still wishes to litigate the '855, '461 and '366 patents, it must do so by the mechanism set

forth by the Court in its August 16, 2006 Order—it should seek leave of Court to file a

supplemental pleading under Rule 15(d).

Rule 12(f)'s description of "redundant" matter has been held to encompass the

same allegations or claims in either the same or a previously-filed action. *See Owens v.*

*Blue Tee Corp.*, 177 F.R.D. 673, 678 (M.D. Ala. 1998) (district court struck defendant's

counterclaims because they were redundant with respect to claims defendant was

asserting as plaintiff in pending, previously-filed action); *see also* MOORE'S FEDERAL

PRACTICE 3D § 12.37[3] (noting that "generally, courts will strike a claim as 'redundant'

when it essentially repeats another claim in the same complaint"). Here, Abbott's August 17, 2006 Complaint alleges that DexCom's STS device—the same device accused of infringing the four original patents in the August 11, 2005 Complaint—infringes the three new patents (one of which comes from the same patent family as the original four patents).

> ### 2. The August 17, 2006 Complaint Is Redundant of Claims and Issues That Abbott Has Already Injected Into C.A. No. 05-590 (GMS).

Abbott already injected the three new patents into C.A. No. 05-590. Indeed, the complexity occasioned by the introduction of the three new patents led the Court to issue an amended scheduling order which resulted in the elimination of all dispositive motions. *See generally* D.I. 71. Abbott even recognized that, were the Court to grant DexCom's July 12, 2006 Motion to Strike, Abbott's proper recourse was to request leave to file a supplemental pleading under Rule 15(d). *See, e.g.,* D.I. 67 at p. 2 ("If the Court finds that leave is required, Abbott affirmatively requests it.").

The Court did not, in its August 16, 2006 Order, preclude Abbott from adding the three new patents to the original case. The Court held that Abbott's supplemental pleading required Abbott to first seek leave of court pursuant to Rule 15(b). Abbott is free to add the three patents to the original case, but first must seek leave of court to do so. The Court therefore should strike the new complaint as redundant and instruct Abbott to seek leave under Rule 15(d) at the appropriate time. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 841 (S.D.N.Y. 1988) (in action seeking declaratory judgment of noninfringement and invalidity, court struck affirmative defense of unclean hands as redundant of antitrust counterclaim).

Rule 12(f) is not limited to striking just allegations and affirmative defenses. District courts have stricken entire counts and claims under Rule 12(f). *See Munie v. Stag Brewery*, 131 F.R.D.559, 560 (N.D. Ill.1989) (where plaintiff alleged premises liability and personal injury damages in separate counts, second count stricken on

redundancy grounds); *Davidson v. John Deere & Co.,* 644 F. Supp. 707, 712-13 (N.D. Ind. 1986) (striking claim for breach of implied warranty under UCC as duplicative of strict liability/products liability claim). The Court may strike Abbott's newly-filed complaint in its entirety, finding all three counts to be redundant of claims that should have been introduced via a motion for leave to file a supplemental complaint under Rule 15(d). *See* Ex. F at p. 8; *see also Rogers v. Mount Union Borough,* 816 F. Supp. 308, 318 (M.D. Penn. 1993) (striking Count V, which alleged 13th and 14th amendment violations, as redundant of Counts II and III, which alleged violations of 42 U.S.C. §§ 1983, 1985 and 1986).

Abbott's problem is not that the Court has barred it from adding the three patents to its dispute with DexCom. Abbott's problem is that it refuses to follow the proper procedure provided in the Federal Rules and indicated by this Court—namely, seeking leave to file a supplemental complaint under Rule 15(d). Abbott's recourse following the Court's August 16, 2006 Order was not to file a separate complaint, but to seek leave to amend in light of the Court's decision to strike its improper "amended complaint." *See* Ex. F at p. 8; *see also* MOORE'S FEDERAL PRACTICE 3D § 12.37[4] ("If a motion to strike is granted, the Court should ordinarily grant . . . leave to amend so long as there is no prejudice to the opposing party.") Abbott can seek the required leave of Court once the stay is lifted.

### 3. DexCom Will Be Prejudiced By Responding To Two Separate Cases In This Court Alleging That The STS Device Infringes Abbott's Patents.

DexCom will suffer substantial prejudice if Abbott is permitted to maintain *two separate cases* in the same court accusing DexCom's same product of infringing patents from the same family. While the original case is stayed, DexCom will be forced to defend itself—at considerable cost—against the allegations of infringement set forth in Abbott's August 17, 2006 complaint. Were DexCom to prevail in this new case, it faces the possibility of turning around and immediately defending itself against the closely

related original claims of infringement (if the four patents survive reexamination and the

Court lifts its stay).  *See, e.g., A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570

(D.N.J. 2003) ([I]n deciding whether to consolidate actions under Rule 42(a), the court

must balance the risk of prejudice and possible confusion against the risk of inconsistent

adjudications of common factual and legal issues, the burden on the parties and

witnesses, the length of time required to conclude multiple lawsuits as against a single

one, and the relative expense to all concerned of the single-trial and multiple-trial

alternatives.").  Because of the similarities in the subject matter of the two cases, Abbott

should be instructed to seek leave under Rule 15(d) to add the three new patents to C.A.

No. 05-590 once the stay is lifted.  That way, the Court and parties will conserve

resources rather than preparing and trying two separate cases involving nearly identical

subject matter.

**B.      Alternatively, The Court Should Consolidate This Case With C.A. No. 05-590 (GMS).**

As Abbott acknowledged in its Opposition to DexCom's July 12, 2006 Motion to

Strike Abbott's June 27, 2006 "Amended Complaint," this case should be consolidated

with C.A. No. 05-590.  According to Abbott, "DexCom ignores the obvious reality that

Abbott could have filed a new complaint in this jurisdiction at any time, [and] that the

new case would likely have been consolidated with the current case before this Court…"

D.I. 67 at p. 1.  Under Rule 42(a) of the Federal Rules of Civil Procedure, C.A. No. 06-

514—if the Court denies DexCom's Rule 12(f) Motion to Strike and allows Abbott's new

complaint to stand—should be consolidated with C.A. No. 05-590 in light of the

similarity in the parties, subject matter and issues.

A district court enjoys broad discretion when deciding whether to consolidate or

stay proceedings. *See Blake v. Farrell Lines, Inc.,* 417 F.2d 264, 266 (3d Cir. 1969) ("the

trial judge, under Rule 42(a), is given the broad authority to 'make such orders

concerning proceedings therein as may tend to avoid unnecessary costs or delay'"); *see*

*also Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 80 (D. N.J. 1993) ("Rule 42(a) gives the district court 'broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice.'", quoting *Waste Distillation Tech., Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991) (emphasis removed). With respect to consolidation, Federal Rule of Civil Procedure 42(a) provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). To determine whether to consolidate, a court balances the interest in judicial efficiency with the potential for inconvenience, delay, or expense. *See, e.g., United States v. Dentsply International, Inc.,* 190 F.R.D. 140, 142-143 (D. Del. 1999).

Here, both of Abbott's complaints accuse the same device (DexCom's STS device) of infringing patents which involve closely related subject matter. Indeed, one of the three new patents is from the same "patent family" as the four original patents. The witnesses, documents and exhibits related to DexCom's accused device likely will be the same for all seven patents asserted in the two cases. The Court should consolidate the two cases in light of the overlapping factual and legal issues. *See* MOORE'S FEDERAL PRACTICE 3D § 42.10[1][b] (noting that "actions that are consolidated are of a 'like nature,' such as patent infringement actions involving the same device"); *see also Cedars-Sinai Med. Ctr. v. Revlon, Inc.,* 111 F.R.D. 24, 31 (D. Del. 1986) (original action consolidated with second action against defendant alleging infringement of a closely related patent). Moreover, where two cases are "pending in the same court and brought by the same plaintiff, [it] is a sufficient basis for consolidation if combining the two cases will simplify the litigation process." MOORE'S FEDERAL PRACTICE 3D § 42.10[1][c][iv]; *see also Hanes Cos., Inc. v. Ronson,* 712 F. Supp. 1223, 1230 (M.D.N.C. 1988) (court

found consolidation of two cases filed by same plaintiff "enhance[d] efficiency and economy for all concerned").

### C.   Whether Or Not It Is Consolidated With C.A. No. 05-590 (GMS), The Court Should Stay C.A. No. 06-514 (GMS).

Because it should be consolidated pursuant to Fed.R.Civ.P. 42(a) with a matter that has been stayed (C.A. No. 05-590), this case likewise should be stayed. The same factors the Court considers in determining whether to stay a case in light of reexamination by the Patent Office also weigh in favor of staying this case in light of consolidation. In any event, this case also should be stayed pending the PTO's consideration of the requests for reexamination of the three new patents.

### 1.   The Relevant Factors All Weigh In Favor Of Staying This Case.

A district court's inherent power to control and manage its docket includes the discretion to stay proceedings. *See Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003), attached as Ex. G. It is well-established that the PTO's reexamination of patents subject to litigation is grounds for a stay. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings . . . , including the authority to order a stay pending conclusion of a PTO reexamination."); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985) ("The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation.") *modified in non-pertinent part,* 771 F.2d 480 (Fed. Cir. 1985).

A stay order can be issued even before the PTO has granted the request for reexamination. *See, e.g., Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at *5 (E.D. Ark. June 20, 1991), attached as Ex. H (stay issued pending the PTO's response to a reexamination request); *Essex Group, Inc. v. Southwire*

*Co.,* No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761, at \*3 (N.D. Ga. Jan. 31, 1986),
attached as Ex. I (same).

When ruling on a motion for stay, courts generally consider the following factors:
"(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the
non-moving party; (2) whether a stay will simplify the issues in question and trial of the
case; and (3) whether discovery is complete and whether a trial date has been set." *Alloc,
Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, \*4 (D. Del.
July 11, 2003), attached as Ex. J (granting motion for stay); *United Sweetener USA, Inc.
v. Nutrasweet Co.*, 766 F. Supp. 212, 217-18 (D. Del. 1991) (stating similar test). All
three factors weigh heavily in favor of a stay pending the outcome of the PTO's
administrative review of the four asserted patents in this case.

> ### 2.    A Stay Will Simplify Issues, Avoid Inconsistent Rulings and Conserve the Resources of the Court and Parties.

Because the administrative proceedings before the PTO may moot or resolve the
issues presented in this case, the law firmly recommends entry of a stay pending
conclusion of the PTO's review of the three new patents. Indeed, a stay is necessary here
to prevent a waste of the Court's resources and those of the parties. *See Gonnocci Rev.
Trust v. Three M Tool & Mach., Inc.*, No. 02-74796, 2003 U.S. Dist. LEXIS 24423, at
\*12-13 (E.D. Mich. Oct. 7, 2003), attached as Ex. K (stay appropriate where considerable
time and resources already spent, but much work remaining, including responses to and
judicial review of two summary judgment motions and preparation for trial); *Bausch &
Lomb, Inc. v. Alcon Lab., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) (granting stay
pending reexamination to avoid wasting "the time, resources, and significant efforts of all
those involved").

"One purpose of the reexamination procedure is to eliminate trial of that issue
(when the [patent] is canceled) or to facilitate trial of that issue by providing the district
court with the expert view of the PTO (when a claim survives the reexamination

proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983). Congress specifically "instituted the reexamination process to shift the burden of reexamination of patent validity from the courts to the PTO." *Canady v. Erbe Elektronedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002). Continued litigation in the face of a pending reexamination proceeding is fraught with the potential for the waste of judicial resources given that, "[g]enerally speaking, the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%." *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004). And the courts should "not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers." *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808 MHP, 1993 U.S. Dist LEXIS 6449, * 4 (N.D. Cal. May 6, 1993), attached as Ex. L (citation omitted). For this reason, courts regularly stay cases pending completion of reexamination proceedings "to wait for reexamination results that will simplify litigation by eliminating, clarifying, or limiting the claims." *Canady*, 271 F. Supp. 2d at 68, citing *Ethicon,* 849 F.2d at 1428; *see also Whatley v. Nike, Inc.*, 54 U.S.P.Q. 2d 1124, 1125 (D. Or. 2000) (there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings," quoting *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)).

There are three possible outcomes of a reexamination: the PTO may cancel, amend or confirm the issued claims. If the PTO cancels all the asserted claims, then Abbott no longer has patents on which it may proceed against DexCom. If that occurs and the Court does not stay this case, then all of the time and cost expended by the Court

and the parties will have been wasted. If the claims are amended by the PTO, then the issues and scope of discovery will change. Moreover, changes to the claims likely will affect both the claim construction process and outcome. First, the reexamination process will create additional intrinsic evidence—in the form of new prosecution history—that the Court will need to consider in construing the claims. Second, if a stay is not entered and discovery and claim construction proceed, subsequent changes to the claims as a result of the reexamination process will necessitate that the Court revisit claim construction.[3] Absent a stay, the benefits of this Court's practice of resolving claim construction at an early stage will be lost.

As the Court recognized in its August 16, 2006 Order staying C.A. No. 05-590:

> Contrary to Abbott's position, the court finds that granting the stay will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the four [Abbott] patents undergoing reexamination are invalid, then many of the issues in the litigation will become moot. Additionally, it is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting efficiency. Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions.

Ex. F at p. 11-12. The same rationale applies with equal, if not greater, force here. As DexCom informed the PTO in its reexamination requests, there is strong evidence that claims in all three patents are rendered anticipated or obvious by prior art references. Should the PTO grant DexCom's reexamination requests, it is likely that all or some of

---

[3]     Even in the unlikely event that the PTO confirms the claims of Abbott's patents, any new prosecution history (*i.e.*, arguments made by Abbott to defeat obviousness or anticipation rejections made by the PTO) will likely affect the proper construction of the asserted claims.

the claims will either be cancelled or amended.  Based on the PTO's own statistics, there

is a significant likelihood that the PTO will order reexamination of Abbott's three

patents.  In 2004, the PTO granted 408 requests for reexamination *while denying only 11*.

*See* Ex. D.  Similarly, during 2002 and 2003, the PTO granted a total of 624 requests for

reexamination while denying only 29.  *Id.*  In fact, from 1981 through 2004, 91% of all

requests for reexamination were granted.  Ex. E at ¶ 5.  And of those reexaminations

actually granted between 1981 and 2004, 74% resulted in either the cancellation of all

claims or at least some claim changes.  *Id.* (¶ 9).

      Entry of a stay furthers the purposes of the reexamination statute.  35 U.S.C.

§ 301 *et seq.*  As discussed above, the statute was designed, in part, to eliminate trials on

patent claims that are cancelled or substantially narrowed.  *See Gould*, 705 F.2d at 1342.

Accordingly, there is a "liberal policy in favor of granting motions to stay proceedings

pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp.,*

844 F. Supp. at 1381.  As this Court noted in *Pegasus*, a stay pending reexamination is

beneficial not only because it provides courts with the PTO's expertise in evaluating the

prior art; but also because it streamlines the litigation process in the following ways:

> (1) many discovery problems relating to the prior art may
> be alleviated; (2) the record of the reexamination likely
> would be entered at trial, reducing the complexity and
> length of the litigation; (3) the issues, defenses, and
> evidence will be more easily limited in pre-trial
> conferences following a reexamination; (4) the outcome of
> the reexamination process may encourage a settlement
> without further involvement of the court; and (5) if the
> patent is declared invalid, the suit likely will be dismissed
> as to that patent . . . .  These efficiencies will result in a
> reduced cost of litigation for the parties and more effective
> utilization of the limited resources of the court.

*Pegasus*, 2003 U.S. Dist. LEXIS 8052, at *6, attached as Ex. G (internal citations

omitted).  For all of these reasons, the Court should stay this case to conserve the

resources of the Court and parties.

3.      **Courts Routinely Grant Stays At This Early Stage In The Proceedings.**

Courts routinely stay matters in favor of patent reexamination where, as here, the case is in its initial stages and no discovery has occurred. *E.g., Werre v. Battenfeld Techs., Inc.*, No. 03-1471-AA, 2004 U.S. Dist. LEXIS 23250, *3 (D. Or. Nov. 9, 2004), attached as Ex. M; *Tap Pharm.*, 70 U.S.P.Q. 2d at 1320; *In re Laughlin Prods, Inc. Patent Litigation*, 265 F. Supp. 2d 525, 532 (E.D. Pa. 2003); *Methode Elecs., Inc. v. Infineon Techs. Corp.*, No. C 99-21142 JW, 2000 U.S. Dist. LEXIS 20689, *6-*7 (N.D. Cal. Aug. 7, 2000), attached as Ex. N; *ASCII Corp.*, 844 F. Supp. at 1381.

The rationale for staying cases in this posture—that is, when the case is in its early stages—is that the "patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office." *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) (citations omitted). Where a party acts early in patent litigation to seek reexamination by the PTO, the expertise and cost efficiencies for which the reexamination procedure was created can best be effectuated.

The facts and procedural history precisely fit the policy justifications for a stay. Abbott commenced this action only 20 days ago. DexCom has not answered; it has moved to strike the complaint pursuant to Rule 12(f). No discovery has been initiated, and the Court has yet to set a Rule 16 scheduling conference. Staying the case early in the litigation process will maximize efficiency and promote judicial economy. In *Alloc*, this Court entered a stay where, as here, discovery had not begun, the discovery schedule had not been entered, and no trial date had been set. *Alloc*, 2003 U.S. Dist. LEXIS 11917, at *8, attached as Ex. J ("stay will be entered before any party incurs substantial

litigation-related expenses"). Likewise, by granting a stay in this case, the Court will conserve the resources of all involved.

### 4. A Stay Will Not Prejudice Abbott.

Abbott will not suffer any substantial prejudice by a stay. *If* the PTO does not invalidate or alter the claims of Abbott's patents, then Abbott's legal remedy will not be affected. *See Sulzer Inc. v. Black Clawson Co.*, No. 93 Civ. 8721, 1995 U.S. Dist. LEXIS 8328, at *3 (S.D.N.Y. June 14, 1995), attached as Ex. O ("[T]he defendant will not be prejudiced by the stay and the stay will conserve the resources of the parties and promote the efficient resolution of this case."). Moreover, any narrowing of the issues due to reexamination will benefit Abbott as much as DexCom, by minimizing needless waste of resources. As the Court concluded in its August 16, 2006 Order when it rejected Abbott's claim that "it will be unable to enforce its patents while in reexamination, "while Abbott may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice Abbott, or present any clear tactical disadvantage." Ex. F at p. 11 (emphasis in original).

In contrast, allowing this case to proceed in conjunction with the PTO proceedings would not only forgo efficiencies but would also create a substantial risk of inconsistent rulings or this Court's issuing advisory opinions. *See Gioello Enterprises Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) at *1, attached as Ex. P ("Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions."). While the PTO <u>must</u> conclude its administrative review, this Court has the discretion to stay this litigation. Thus, only the Court can take steps to avoid potential conflict. *Id.* at *2 ("Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict.").

## IV.   CONCLUSION

Because it is redundant of issues Abbott already injected into C.A. No. 05-590, Abbott's August 17, 2006 complaint should be stricken in its entirety pursuant to Rule 12(f).  Abbott's proper procedural remedy is to seek leave under Rule 15(d) to file the supplemental complaint adding the three new patents after the Court lifts its stay.

Alternatively, this case should be consolidated pursuant to Fed.R.Civ.P. 42(a) with C.A. No. 05-590 in light of the common legal and factual issues.  In light of the Court's August 16, 2006 Order staying that case, this case also should be stayed until the Court lifts that stay.  Finally, regardless of consolidation, the Court should stay this case in light of DexCom's recently filed requests for reexamination of the three new patents.

Dated: September 7, 2006              YOUNG CONAWAY STARGATT
                                      & TAYLOR, LLP


                                      _____
                                      Josy W. Ingersoll (No. 1088)
                                      Melanie K. Sharp (No. 2501)
                                      John W. Shaw (No. 3362)
                                      1000 West Street
                                      Brandywine Building, 17th Floor
                                      Wilmington, DE 19801

                                      P.O. Box 391
                                      Wilmington, DE  19899-0391
                                      (302) 571-6689
                                      jingersoll@ycst.com

                                      MORRISON & FOERSTER LLP
                                      David C. Doyle (CA Bar No. 70690)
                                      M. Andrew Woodmansee (CA Bar No. 201780)
                                      Brian M. Kramer (CA Bar No. 201780)
                                      12531 High Bluff Drive, Suite 100
                                      San Diego, CA 92130
                                      (858) 720-5100
                                      mawoodmansee@mofo.com

                                      *Attorneys for Defendant DexCom, Inc.*

sd-333683                                17

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that on September 7, 2006, I caused

to be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Rodger Dallery Smith, II, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on September 7, 2006, I caused a copy of the foregoing

document to be served by hand delivery on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

**BY E-MAIL**

> James F. Hurst, Esquire
> Stephanie S. McCallum, Esquire
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL 60601

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jingersoll@ycst.com

Attorneys for Dexcom, Inc.