**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ABBOTT DIABETES CARE, INC., | ) | |
| | ) | C.A. No. 06-514 (GMS) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

**DEXCOM, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION
(1) TO STRIKE THE COMPLAINT PURSUANT TO RULE 12(f), OR IN THE
ALTERNATIVE, (2) TO CONSOLIDATE WITH C.A. NO. 05-590 (GMS)
PURSUANT TO RULE 42(a), OR (3) FOR STAY PENDING REEXAMINATION
OF THE PATENTS IN SUIT**

YOUNG CONAWAY STARGATT & TAYLOR,LLP
Josy W. Ingersoll (No. 1088)
Melanie K. Sharp (No. 2501)
John W. Shaw (No. 3362)
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6681
msharp@ycst.com

MORRISON & FOERSTER LLP
David C. Doyle (CA Bar No. 70690)
M. Andrew Woodmansee (CA Bar No. 201780)
Brian M. Kramer (CA Bar No. 212107)
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100
mawoodmansee@mofo.com

*Attorneys for Defendant DexCom, Inc.*

# TABLE OF CONTENTS

Page

Table of Authorities ..................................................................................................... ii

I.  INTRODUCTION ....................................................................................................1

II. ARGUMENT............................................................................................................2

A. The Court Has The Authority To Strike Abbott's August 17, 2006
Complaint As Redundant Under Rule 12(F). ..............................................2

B. If The Court Does Not Strike The August 17, 2006 Complaint, The
Court Should Consolidate C.A. No. 05-590 With C.A. No. 06-514. ..........4

C. If The Court Does Not Strike The August 17, 2006 Complaint, The
Court Should Stay This Case Pending PTO Reexamination Of
The Patents-In-Suit. .....................................................................................6

1. Abbott's Conclusory Allegations That DexCom's Requests
For Reexamination Lack Merit Are Not Shared By The PTO. .......8

2. Abbott's Claims That DexCom's Requests For Reexamination
Are Tools Of A Broad Scheme To Delay This Case Are False
And Omit That Abbott Agreed That DexCom Would Postpone
The Newest Requests For Reexamination During Settlement
Discussions. ................................................................................10

3. DexCom's Claim Construction Positions Before The PTO
Apply The Correct Reexamination Standard, And Abbott
Does Not Offer Competing Claim Constructions...........................12

4. Dexcom Narrowly Tailored Its Requests For Reexamination
To Only Claims That Could Possibly Be Asserted Against
DexCom. ......................................................................................14

5. Abbott's Failure To File A Motion For Preliminary Injunction
Precludes It From Arguing That A Stay Cannot Be Entered
Until It Seeks Injunctive Relief.....................................................15

D. Abbott's Criticism Of The Reexamination Process Has No Bearing
On The Merits Of The Present Motion. ......................................................15

III. CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

Pages

## Cases

*In re Bass,*
    314 F.3d 575 (Fed. Cir. 2002)....................................................................................12

*In re Yamamoto,*
    740 F.2d 1569 (Fed. Cir. 1984)................................................................................12

*In re Zletz,*
    893 F.2d 319 (Fed. Cir. 1989)..................................................................................12

*In re Cortright,*
    165 F.3d 1353 (Fed. Cir. 1999)................................................................................13

## Statutes

Fed. R. Civ. P. 12.............................................................................................................2, 16

Fed. R. Civ. P. 15...........................................................................................................2, 3, 4

Fed. R. Civ. P. 42..................................................................................................................5

## Other Authorities

Manual of Patent Examining Procedure § 2111.01 .........................................................12

## I.    INTRODUCTION

DexCom's motion asks the Court to review Abbott's August 17, 2006 Complaint and either (1) strike it under Rule 12(f); (2) stay the case pending reexamination of the patents-in-suit; or (3) consolidate the case with Abbott's earlier-filed case. Instead of addressing the merits of the relief DexCom seeks today, Abbott devotes most of its brief to irrelevant rehashing of the past. Page after page, Abbott complains about events which occurred <u>before</u> the Court granted DexCom's prior motion to dismiss and stay: a February 23, 2006 hearing, a March 9, 2006 deposition, and events leading to DexCom's March 27, 2006 product launch. None of Abbott's complaints is true; none has anything to do with the present motion.

After granting DexCom's four Requests for Reexamination on the four original Abbott patents, the PTO has now granted the first of DexCom's Requests for Reexamination of the three new Abbott patents. Given that history, and the PTO's own statistics, the final two likely will follow shortly. In the alternative, the Court should consolidate and stay this case along with C.A. No. 05-590. Abbott's low opinion of DexCom's Requests for Reexamination is not shared by the PTO. As for Abbott's incessant complaints of "delay," Abbott ignores that its two cases were all part of a single schedule before it filed the second case. Abbott's decision to wait ten months to add the three new patents to the litigation does not obligate the Court to allow piecemeal litigation of Abbott's claims against DexCom's sole product. Abbott raises no serious challenges to the efficiencies achieved by awaiting PTO consideration of the Requests for Reexamination, and its allegation that DexCom "delayed" filing its Requests for Reexamination fails to inform the Court that DexCom agreed to postpone filing the requests as part of settlement negotiations.

## II.    ARGUMENT

### A.    The Court Has the Authority to Strike Abbott's August 17, 2006 Complaint as Redundant Under Rule 12(f).

Abbott's August 17, 2006 Complaint alleging that the DexCom STS Sensor

infringes U.S. Patent Nos. 6,134,461; 6,990,366; and 5,899,855 ("the three new patents")

is identical (i.e., redundant) to its June 27, 2006 Amended Complaint in C.A. No. 05-590

alleging that the same DexCom STS Sensor infringes the same three patents.  The Court

should strike the August 17, 2006 Complaint.  Abbott claims that DexCom cites no

binding authority permitting the Court to strike the new complaint.  The authority is

Federal Rule of Civil Procedure 12(f), which provides that "the court may order stricken

from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter."

While the Third and Federal Circuits have not yet addressed the meaning of the

term "redundant," this Court need not await another district court ruling to be appealed

before concluding that Abbott's August 17, 2006 pleading is redundant to the June 27,

2006 pleading.  In its August 17, 2006 Order,[1] the Court addressed three distinct

DexCom motions – a motion to dismiss for failure to state a claim (D.I. 5), a motion to

stay the case pending reexamination (D.I. 25), and a motion to strike the June 27, 2006

Amended Complaint for failure to comply with Rule 15(d) (D.I. 61).[2]  In its motion to

strike the June 27, 2006 pleading, DexCom requested that the Court require Abbott to

follow the rules in this case, including Rule 15(d).  The Court ruled that "because Abbott

---

[1]     The Court's Order (D.I. 72 in C.A. No. 05-590) was dated August 16, 2006, and was entered on August 17, 2006.  For simplicity, DexCom refers to it through this brief as "the August 17, 2006 Order."

[2]     Unless specifically noted, all references to Docket Items (D.I.) refer to C.A. No. 05-590.

did not file a motion to supplement its complaint in the present case, the court will strike it from the docket for failure to comply with Rule 15(d)." (D.I. 72 at 8.)

Abbott interpreted that order as an invitation to multiply the proceedings by filing a new lawsuit with the exact same allegations. DexCom, on the other hand, understands the Court's ruling to require that Abbott comply with Rule 15(d) and did not preclude Abbott from asserting the three new patents in C.A. No. 05-590. DexCom's understanding comes from considering the August 17, 2006 Order in context with the Court's other orders. Just two weeks before its August 17, 2006 Order, the Court ruled that all asserted patents could be considered in C.A. No. 05-590. In fact, the Court expressly told the parties during a July 21, 2006 hearing that it was not inclined to grant the parties' joint request to extend the case deadlines in light of the addition of the three new patents because the discovery schedule already contemplated that additional patents would be added by the amendment deadline. (D.I. 69 at 2:22-3:7) ("Counsel, this distresses me. . . . I do typically try to account for, in setting the discovery deadline with the assistance of counsel and the other deadlines we set in the case, for the possibility of an amendment.") The Court allowed the three new patents into C.A. No. 05-590, and on August 3, 2006, the Court issued an Amended Scheduling Order putting all seven patents on the same schedule. (D.I. 71.) The Court's ruling two weeks later that Abbott failed to comply with Rule 15(d) did not mean that Abbott could carve those patents out into another lawsuit. Rather, the Court's ruling required that Abbott conform its pleadings to the Federal Rules of Civil Procedure.

Abbott's alternative argument that "the Court, by implication expressly denied Abbott's request for leave to add the Three New Patents to the 2005 Action" is more

misinterpretation of the Court's August 17, 2006 Order.  (*See* Abbott's Answering Brief,

D.I. 9 in C.A. No. 06-514 ("Answering Brief") at 7.)  The Court expressly found that

"Abbott did not file a motion to supplement its complaint in the present case." (D.I. 72 at

8.)  Since Abbott did not file a motion requesting leave in the first instance, the Court

could not have "implicitly" denied a request that Abbott did not make.  The "motion to

supplement" cited by Abbott is a single sentence buried in Abbott's opposition brief to

DexCom's motion to strike the June 27, 2006 Amended Complaint for failure to comply

with Rule 15(d).

     At the time that the Court put all seven patents into a single schedule, four of the

patents were then undergoing reexamination.  DexCom thereafter asked the PTO to

reexamine the three new patents.  Because the PTO alters or cancels claims in

reexamination 74% of the time, it is doubtful that all seven patents will be asserted by the

time of trial.  (DexCom's Opening Brief, D.I. 6 in C.A. No. 06-514 ("Opening Brief")

Ex. E at 2.)  Thus, consistent with the Court's August 3, 2006 and August 17, 2006

Orders, Abbott should file its Rule 15(d) motion in C.A. No. 05-590 at the appropriate

time; and the Court should strike the August 17, 2006 Complaint pursuant to Rule 12(f).

When the PTO completes its review, the parties and the Court will have benefited from

the narrowing and explication of the issues resulting from the alteration and/or

cancellation of the asserted claims.

>      **B.     If the Court Does Not Strike the August 17, 2006 Complaint,
>              The Court Should Consolidate C.A. No. 05-590 with C.A. No.
>              06-514.**

     If Abbott's second lawsuit is deemed to have been procedurally proper, then the

Court should consolidate the two cases.  Abbott argues against consolidation with feeble

claims that it will suffer some unspecified prejudice rather than addressing the factors considered by Courts in deciding consolidation under Rule 42(a). (Answering Brief at 17-18.) Abbott ignores that, at its own request, all seven patents were part of the same case and same case schedule. Abbott cannot now turn the Court's August 17 ruling against it into authorization to impose on the Court and DexCom the inefficiencies of two separate lawsuits against the same accused device by the same patentee.

Abbott raises three arguments against consolidation, each a variation of the contention that DexCom's Rule 42(a) request is "premature." First, Abbott argues that the PTO has not granted the Requests for Reexamination. That is no longer true. The PTO granted the first of three requests and is expected to rule on the other two requests shortly.

Second, Abbott claims that the two sets of reexaminations are separated by seven months and that the first four patents will be reexamined months before the three new patents are considered. That argument again ignores that the day before it filed the August 17, 2006 Complaint, all seven patents were on the same schedule. Moreover, the gap in the reexamination requests is the direct result of Abbott's delay in adding the three new patents to C.A. No. 05-590. Abbott announced in February 2006 that it was considering the addition of new patents to C.A. No. 05-590. DexCom, in response, informed Abbott and the Court that, if Abbott added additional patents from the same family, DexCom would likely seek reexamination of those patents as well. (Answering Brief, Ex. A at 31:5-10.) But Abbott waited five more months to add the three new

patents to the case on June 27, 2006.[3] Thus, the gap in reexamination proceedings is of

Abbott's own making and not a reason to allow two separate lawsuits.

Third, Abbott claims that "much of the technology at issue in the 2006 Action is

very different from the technology at issue in the 2005 Action." (Answering Brief at 18.)

That statement completely contradicts Abbott's earlier characterization of the three new

patents. (D.I. 32 at 20 ("Abbott has additional patents that it has not yet asserted, but will

almost surely be added to the case in short order after further due diligence. Because

these patents cover the same general subject matter, it does not make sense to cease

discovery since it will have to occur with the non-reexamined patents.").) As described

in more detail below, to the extent that one of the three new patents – the '855 patent –

has some claims encompassing a glucose monitoring device coupled to a children's video

game, the video game specific claims are not being asserted against DexCom.

Unasserted claims directed to different embodiments of the same technology provide no

reason to place the '855 patent into a different lawsuit.

### C. If the Court Does Not Strike the August 17, 2006 Complaint, the Court Should Stay This Case Pending PTO Reexamination of the Patents-in-Suit.

Since the filing of DexCom's opening brief, the PTO granted DexCom's Request

for Reexamination of the '461 patent. DexCom expects the PTO to grant the other two

---

[3]     Abbott suggests that it was unable to add the three new patents until it received a
product sample from DexCom. But Abbott does not explain how it could determine that
DexCom infringed the four original patents without having seen DexCom's product in
August 2005, yet could not determine whether DexCom infringed the three new patents
until it had received a product sample. Moreover, DexCom's product was publicly
available to anyone who wanted one in March 2006.

Requests for Reexamination shortly.[4] For the same reasons that the Court stayed C.A. No. 05-590 pending reexamination of Abbott's patents in that case, the Court should grant DexCom's alternative motion to stay this case pending reexamination. Specifically, the Court cited the following factors that when staying Case No. 05-590 that are equally applicable to this case:

- Abbott's argument that it will suffer undue prejudice because it will be unable to enforce its rights during reexamination is flawed because "Abbott's position, however, assumes that the PTO will leave all of the more than 200 claims of the four patents-in-suit unaltered after reexamination." (D.I. 72 at 11.)

- "[G]ranting the stay will simplify the issues and focus the litigation. For example, if the PTO determines that some or all of the claims of the four patents undergoing reexamination are invalid, then many of the issues in the litigation will become moot." (*Id.*)

- "[I]t is beyond dispute that the court, as well as the parties, would benefit from a narrowing of the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation. A stay, therefore, will conserve the resources of the parties and the court, thereby promoting

---

[4]     For two of the three Requests for Reexamination, the PTO required that certain non-prior art references be removed from one particular PTO form and placed on a different form before considering the requests on the merits. DexCom complied with the PTO's directive and is awaiting the PTO's decision to grant reexamination of those patents.

efficiency.  Moreover, the court would not run the risk of inconsistent rulings or issuing advisory opinions." *(Id.* at 11-12.)

- Abbott's argument that a stay precludes it from seeking an injunction is "moot" because Abbott "did not, and has not, filed any such motion, even though the FDA has recently approved DexCom's glucose monitoring product for marketing." *(Id.* at 11.)

The general factors this Court considers when determining whether a stay is appropriate – "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set" (D.I. 72 at 10) – should be applied no differently for the August 17, 2006 Complaint than the complaint in C.A. No. 05-590.  There are no meaningful differences between the technology and issues between the two cases that warrant a stay in the first case but not the second case.  Nevertheless, Abbott makes the exact arguments here against a stay that it made, and the Court rejected, in C.A. No. 05-590.

**1.     Abbott's Conclusory Allegations That DexCom's Requests for Reexamination Lack Merit Are Not Shared by the PTO.**

With no support, Abbott claims that a stay would harm Abbott because DexCom's Requests for Reexamination are "meritless," "frivolous," "baseless," and "do not raise any real doubts about the patentability of Abbott's inventions." (Answering Brief at 12-16.)  Abbott used similar words to describe DexCom's first four Requests for Reexamination in C.A. No. 05-590, yet the PTO determined that each request raised substantial new questions of patentability.  With respect to the three new patents, the PTO

has already begun concluding that DexCom has raised substantial new questions of patentability despite the supposedly "frivolous" nature of its requests.

With respect to the '461 patent, Abbott claims that a stay is not warranted because "DexCom's main piece of prior art, Shichiri I . . . was already before the examiner." (Answering Brief at 16.)  While Shichiri I was indeed 1 of approximately 450 references of record during the prosecution of the '461 patent, the PTO granted DexCom's Request for Reexamination and explained that Shichiri I teaches all the elements of claim 1:

> Even though Shichiri I is "old art," since it has been demonstrated that Shichiri I teaches the elements of claim 1 of a glucose sensor having an electrode and a mass transport limiting membrane, and the previous examiner included said elements as a basis for his reasons for allowance, this reference has been presented in a new light. Moreover, since Shichiri I teaches said claim elements, and the previous examiner included said elements as a basis for his reasons for allowance, a reasonable examiner would consider Shichiri I important in deciding whether to allow the claims 1, 2, and 4.  Accordingly, Shichiri I raises a [substantial new question of patentability] with respect to claims 1, 2, and 4.

(Oct. 25, 2006 Order Granting '461 Reexamination at 3, attached as Ex. A.)  While the PTO's reliance on Shichiri I defeats Abbott's specific arguments about "old art," the PTO granted the Request for Reexamination based on other prior art cited by DexCom that was not before the PTO during prosecution.  Specifically, the PTO alternatively granted reexamination for the same claims based on five additional prior art references:  (1) Shichiri et al., "Telemetry Glucose Monitoring Device With Needle-Type Glucose Sensor: A Useful Tool for Blood Glucose Monitoring in Diabetic Individuals," *Diabetes Care*, Vol. 9, No. 3, pp. 298-301, May-June 1986; (2) Ko et al., (Ed.), "Implantable Sensors for Closed-Loop Prosthetic Systems," Mount Kisco, NY: Futura Publishing Company, Inc., 1985, Chapter 15, entitled "Needle-type Glucose Sensor for Wearable

Artificial Endocrine Pancreas," (3) U.S. Patent No. 5,531,878; (4) U.S. Patent No. 5,964,993; and (5) U.S. Patent No. 5,509,410.   (Oct. 25, 2006 Order Granting '461 Reexamination at 4-9, attached as Ex. A.)   Four of those five references were not before the PTO during the original prosecution of the '461 patent.   (*Id.*)   Absent a stay in this case, those new prior art references will be the same references asserted by DexCom in this litigation as anticipating and/or rendering obvious the asserted claims of the '461 patent, and the Court will be required to address them before knowing the PTO's assessment.

2.   **Abbott's Claims That DexCom's Requests for Reexamination Are Tools of a Broad Scheme to Delay This Case Are False and Omit that Abbott Agreed That DexCom Would Postpone The Newest Requests for Reexamination During Settlement Discussions.**

DexCom immediately prepared Requests for Reexamination of the new patents. What Abbott fails to inform the Court is that DexCom agreed to postpone filing the Requests for Reexamination as part of settlement negotiations with Abbott.   Abbott is fully aware that in-house lawyers for both Abbott and DexCom were negotiating a stay of the case well before the Court's August 17, 2006 Order.   At that time, all seven Abbott patents were part of C.A. No. 05-590, and the PTO was reexamining four of the seven patents.   (Declaration of Steven R. Pacelli in Support of Dexcom's Reply Brief ("Pacelli Decl.") ¶¶ 3-4.)   DexCom agreed not to file the Requests for Reexamination for the three new patents during the negotiations.   (Pacelli Decl. ¶ 6.)   The negotiations continued through at least August 14, 2006 – two days before DexCom filed its Requests for Reexamination.   (Pacelli Decl. ¶ 7.)   Abbott wants to have it both ways:  on the one hand, securing an agreement from DexCom to postpone filing the three new Requests for

Reexamination so the parties could explore settlement, and then turn around and argue to this Court that DexCom's compliance with that agreement amounts to a bad-faith "delay" tactic.

At best, Abbott's argument reflects a complete lack of communication between Abbott and its outside counsel. At worst, Abbott's argument violates its duty of honest advocacy before this Court. Other facts indicate the latter is true. Abbott argues that "DexCom waited until the Court ruled whether these Three New Patents would be part of the 2005 Action before requesting reexamination from the USPTO." (Answering Brief at 11-12.) Even an outside Abbott lawyer unfamiliar with the in-house settlement discussions between Abbott and DexCom knows that statement is false. DexCom filed the Requests for Reexamination for two of the three new patents on August 16, 2006. (Opening Brief, Exs. A-C.) The Court's August 17, 2006 Order, while signed on August 16, 2006, did not issue through the Court's ECF system until 11:54 a.m. on August 17, 2006. (*See* Aug. 17, 2006 ECF Notice, attached as Ex. B.) DexCom had no advance notice of the Court's forthcoming ruling when filing the August 16, 2006 Requests for Reexamination. Thus, Abbott's statement that "DexCom waited until the Court ruled" is empirically false. The truth is that DexCom filed its Requests for Reexamination upon an impasse in the settlement discussions. (Pacelli Decl. ¶ 7.)

In light of the settlement negotiations, the timing of the Requests for Reexamination should have no bearing on the third stay factor – the stage of litigation. There has been no discovery in C.A. No. 06-514, DexCom has not filed an answer, and no trial date has been set. No case schedule has been set, and the Court has yet to set a Rule 16 conference. While the Court did set a trial date for Case No. 05-590, that date

will presumably be vacated while that case is stayed pending reexamination of the patents in suit.

      **3.**      **DexCom's Claim Construction Positions Before the PTO Apply the Correct Reexamination Standard, and Abbott Does Not Offer Competing Claim Constructions.**

The second factor this Court considers when deciding a motion to stay is whether a stay will simplify the issues in question and trial of the case. (D.I. 72 at 10.) Abbott claims the reexamination process will not simplify matters and criticizes DexCom for asking the PTO to apply the reexamination rules to DexCom's Requests for Reexamination. Specifically, Abbott complains that DexCom urged the examiner to construe the claims "as broadly as their terms allow." (Answering Brief at 14.) PTO rules require that exact standard. As the Federal Circuit has noted in the context of reexamining patent claims, "the PTO must apply the broadest reasonable meaning to the claim language, taking into account any definitions presented in the specification." *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002) (citing *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984). "While the claims of <u>issued</u> patents are interpreted in light of the specification, prosecution history, prior art and other claims, this is not the mode of claim interpretation to be applied during examination." MPEP § 2111.01 (emphasis in original). During examination, which includes reexamination, the claims must be interpreted as broadly as their terms reasonably allow. This means that the words of the claim must be given their plain meaning unless applicant has provided a clear definition in the specification. *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989). The broadest reasonable interpretation of the claims must also be consistent with the interpretation that

those skilled in the art would reach. *In re Cortright*, 165 F.3d 1353, 1359 (Fed. Cir. 1999).

Abbott next criticizes DexCom's proposed claim constructions, but offers no claim construction of its own. For example, Abbott complains that DexCom misconstrued the term "monitoring means" in the '855 patent. (Answering Brief at 15.) But Abbott neither cites DexCom's proposed construction, found at pages 12-14 of DexCom's Request for Reexamination, nor offers what it believes to be the correct claim construction. Instead, it asks the Court to accept on faith that DexCom's proposed claim construction amounts to a "misinterpretation" and that a stay should not be granted based on a "faulty" claim construction.

With regard to the '366 patent, Abbott claims that DexCom is asserting multiple, inconsistent constructions. (Answering Brief at 15.) Abbott again is not being straight with the Court. Beginning on page 21 of DexCom's Request for Reexamination of the '366 patent, DexCom acknowledges that there may be multiple possible definitions of the term "sensor control unit." (Opening Brief, Ex. B at 21-35.) DexCom notes that if "sensor control unit" is given one definition, then the Shichiri references invalidate the claims. (*Id.* at 21-32.) Starting on page 32, DexCom notes that if "sensor control unit" is given a broader definition, then a different prior art reference, Funderburk, anticipates the claims. DexCom is not urging the PTO to adopt different constructions. (*Id.* at 32-35.) Again, Abbott does not assert that either construction is incorrect and does not offer its own, correct claim construction.

DexCom's Requests for Reexamination reflect a careful acknowledgment of the complex issues that will face this Court absent a stay. During the reexamination

proceedings, the PTO may conclude that one claim construction or the other is consistent with the ordinary meaning and intrinsic evidence of record. That finding will assist this Court and narrow the issues in this case.

**4.      DexCom Narrowly Tailored Its Requests for Reexamination to Only Claims That Could Possibly Be Asserted Against DexCom.**

Abbott misleads the Court by suggesting throughout its brief that "of the 86 claims in the three new patents, DexCom was able to muster arguments for only 12 claims." (Answering Brief at 1, 14.) Abbott's tacitly-worded arguments omit that Abbott does not claim that DexCom infringes any of the 74 claims not subject to reexamination.

DexCom filed narrowly tailored Requests for Reexamination and asked the PTO only to cancel the claims that may be asserted against DexCom in litigation. The '855 patent exemplifies how it is readily apparent that DexCom does not infringe the claims not being reexamined by the PTO. The '855 is directed to a combination video game system and health monitoring system. Of the 53 total claims, claims 1-46 each specifically require "a programmable microprocessor-based video game unit." Abbott cannot in good faith assert that any DexCom STS device includes a video game unit. The preferred "video game unit" described in the '855 patent is the Nintendo® Game Boy®. (*See* D.I. 1 in C.A. No. 06-514, Ex. A at Col. 5:30-34) ("In the currently preferred embodiments of the invention, the handheld microprocessor unit is a compact video game system such as the system manufactured by Nintendo of America, Inc. under trademark "GAME BOY.") Because DexCom's STS Sensor is not coupled to a Game Boy® or any other children's video game unit, DexCom did not ask the PTO to reexamine claims that Abbott could not assert in good faith against DexCom.

5.    **Abbott's Failure to File a Motion for Preliminary
Injunction Precludes it From Arguing That a Stay
Cannot Be Entered Until It Seeks Injunctive Relief.**

As the Court noted in its first stay Order, Abbott did not file a motion for a

preliminary injunction. (*Id.* at 11.) The time for such a motion has long passed. Abbott

threatened to file a motion for a temporary restraining order ("TRO") and preliminary

injunction just before DexCom's product launch, and it contacted the Court to set up a

briefing schedule on a motion for a TRO. Abbott then changed its mind and decided not

to seek a TRO or preliminary injunction before DexCom's March 27, 2006 product

launch. (*See* D.I. 45, letter from Abbott's counsel to Court noting that "Abbott does not

intend to seek a TRO or preliminary injunction at this time. . . .") Abbott withdrew its

motion for a preliminary injunction and sat by while DexCom launched its product.

Having acquiesced to DexCom's product launch in March, Abbott cannot meet its burden

of establishing irreparable harm even were it to change its mind yet again and seek an

injunction. Abbott's unsupported speculation that its own product will get FDA approval

in the future does not address that Abbott has not filed a motion for a preliminary

injunction, and it is now too late to do so.

D.    **Abbott's Criticism of the Reexamination Process Has No
Bearing on the Merits of the Present Motion.**

Abbott cites Congressional testimony discussing future proposals to "improve"

the reexamination process. Whether "improvements" can be made to the reexamination

process has no bearing on the merits of the present motion.[5]

---

[5]    Abbott's citation of testimonial excerpts without a pin cite to the actual testimony
is misleading. Director Dudas' testimony is directed to a future *inter partes*
reexamination procedure whereby all parties would have a full opportunity to be heard
before the PTO and the results of the reexamination process would be binding on the
parties and directly appealable to the Federal Circuit. (Answering Brief, Ex. D at 6.)

## III.   CONCLUSION

The Court should strike Abbott's August 17, 2006 Complaint under Rule 12(f) as redundant of the claims asserted in C.A. 05-590. Should the Court conclude that the claims in the present suit are not redundant, the Court should consolidate the two cases and stay them. In the alternative, the present case should be stayed pending the PTO's consideration of DexCom's Requests for Reexamination. Abbott will not be unduly prejudiced by a stay. The three new patents do not expire until June 2018, which will give Abbott plenty of time to assert its patent rights and obtain injunctive relief should the patents survive reexamination and Abbott prevail at trial. The PTO reexamination proceedings will narrow the issues before the court and reduce the overall costs of litigation. And, this case is in the earliest stage possible to consider a motion to stay – no answer has been filed, no discovery has been conducted, and no trial date has been set.

Dated: November 1, 2006

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
Melanie K. Sharp (No. 2501)
John W. Shaw (No. 3362)
1000 West Street
Brandywine Building, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6681
msharp@ycst.com

MORRISON & FOERSTER LLP
David C. Doyle (CA Bar No. 70690)
M. Andrew Woodmansee (CA Bar No. 201780)
Brian M. Kramer (CA Bar No. 212107)
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5100
mawoodmansee@mofo.com

*Attorneys for Defendant DexCom, Inc.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on November 1, 2006, I caused

to be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Rodger Dallery Smith, II, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on November 1, 2006, I caused a copy of the foregoing

document to be served by hand delivery on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

**BY E-MAIL**

> James F. Hurst, Esquire
> Stephanie S. McCallum, Esquire
> Winston & Strawn LLP
> 35 West Wacker Drive
> Chicago, IL 60601

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> Melanie K. Sharp (No. 2501)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> msharp@ycst.com

> Attorneys for Dexcom, Inc.