IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ABBOTT DIABETES CARE, INC., | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 06-514 GMS |
| v. | ) ) | |
| DEXCOM, INC., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM

**I.    INTRODUCTION**

On August 17, 2006, Abbott Diabetes Care, Inc. ("Abbott") brought this patent infringement action against DexCom, Inc. ("DexCom"). Presently before the court are the following motions: (1) DexCom's motion to strike Abbott's complaint; (2) Dexcom's motion to consolidate this proceeding with C.A. No. 05-590; and (3) Dexcom's motion to stay this proceeding pending reexamination of the patents-in-suit. (D.I. 5.) For the reasons that follow, the court will deny DexCom's motion to strike, grant the motion to consolidate this proceeding with C.A. No. 05-590, and stay the consolidated proceeding until the Patent and Trademark Office (the "PTO") has completed the reexamintion of the seven patents-in-suit.

**II.   BACKGROUND**

### A. Procedural Background

There are presently two patent infringement cases before this court in which Abbott and DexCom are parties, the 05-590 action and the present action. In the 05-590 action, Abbott alleges that DexCom infringes its U.S. Patent Nos. 6,175,752 (the "'752 patent"), 6,284,478 (the "'478 patent"), 6,329,161 (the "'161 patent"), and 6,565,509 (the "'509 patent") (collectively, the "Group I Patents"). Looking to add three more patents to the 05-590 lawsuit, namely U.S. Patent Nos. 6,990,366 (the "'366 patent"), 5,899,855 (the "'855 patent"), and 6,134,461 (the "'461 patent") (collectively the "Group II Patents"), Abbott filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) in the 05-590 action. (05-590, D.I. 55.) DexCom subsequently filed a motion to strike the amended complaint, which the court granted on August 16, 2006. (D.I. 61, 05-590.) Abbott responded by filing the present action, alleging patent infringement of the Group II Patents (D.I. 1, 06-514), and DexCom filed the three motions presently before the court. Following the opening brief, Abbott filed an answering brief (D.I. 9), to which DexCom responded with a reply brief (D.I. 10).[1]

### B. The Technology at Issue in Abbott's Infringement Actions

Between both actions, Abbott alleges that DexCom infringes a total of seven patents: the Group I Patents, which are directed to methods, systems, and devices for continuously monitoring glucose levels in humans, and the Group II Patents, which are directed to a health monitoring system or an electrochemical sensor. The Group I Patents provide an alternative monitoring system for

---

[1]Additionally, the parties filed letters (D.I. 12, 13) that the court will disregard in making its rulings on the pending motions, because they fail to comply with District of Delaware Local Rule 7.1.2(b), which states: "Except for the citation of subsequent authorities, no additional papers shall be filed absent Court approval."

2

diabetics, who currently monitor their glucose levels by pricking their fingers to draw blood several times a day. (05-590, D.I. 32, at 3; see '752 Patent, Col. 1, ll 21-26; '509 Patent Col. 1, ll. 21-26.) The technology described in the Group I Patents was invented to address the need for a small and comfortable device that could continuously monitor glucose levels for days at a time, while permitting a patient to engage in normal activities. (See '752 Patent, Col. 2, ll. 1-4; '509 Patent, Col 2., ll. 5-8.) Each of the Group I Patents relate to an aspect of the continuous glucose monitor, which involves implanting a glucose sensor in a patient and monitoring signals over the life of the sensor.[2] (D.I. 32, at 3.)

     The Group II Patents are directed to a health monitoring system comprising a video game unit ('855 patent, Claims 1, 42, and 51), an electrochemical sensor ('461 Patent, Claims 1, 28, and 29), and a method for using an electrochemical sensor ('366 Patent, Claim 1). More specifically, the technology in the '855 patent was invented to take advantage of the processing and graphical presentation capabilities of a portable video game device, when used as a controller and display unit for a glucose monitoring device. ('855 Patent, Col. 4, l. 55 - Col. 5, l. 13.) The '366 patent is "applicable to an analyte monitoring system using an implantable sensor for the in vivo determination of a concentration of an analyte, such as glucose or lactate, in a fluid. The sensor can be, for example, subcutaneously implanted in a patient for the continuous or periodic monitoring of an analyte in a patient's interstitial fluid." ('366 Patent, Col. 5, ll. 40-50.) The '461 patent relates to an "analyte sensor which can be used for the in vivo and/or in vitro determination of a level of an analyte in a fluid . . . such as glucose or lactate . . . . One embodiment of the invention is an

---

[2] The '752 and '509 patents relate to glucose monitoring devices and their methods of use, while the '478 and '161 patents relate to subcutaneous glucose sensors.

electrochemical sensor [including] a substrate, a recessed channel formed in a surface of the substrate, and a conductive material disposed in the recessed channel." ('461 Patent, Col 2, ll. 15-27.)

## III.   DISCUSSION

### A.   DexCom's Motion to Strike the Complaint

DexCom's motion to strike asserts that the complaint filed in the present case is redundant to the amended complaint that was filed and stricken by the court in the 05-590 action, in view of Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) states, in pertinent part, "[u]pon motion made by a party within 20 days after the service of the pleading upon the party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, motions to strike are disfavored. *Am. Standard Life & Accident Ins. Co. v. U.R.L., Inc.*, 701 F. Supp. 527, 532 (M.D. Pa. 1988). When ruling on such a motion, "the [c]ourt must construe all facts in favor of the nonmoving party . . . and deny the motion if the defense is sufficient under the law." *Id.* Furthermore, courts prefer not to grant a motion to strike "unless it appears to a certainty that . . . [the movant] would succeed despite any statement of the facts which could be proved in support of the defense." *Greiff v. T.I.C. Enterprises, L.L.C.*, No. Civ. 03-882, 2004 WL 115553, at * 2 (D. Del. Jan. 9, 2004).

In support of its motion to strike the complaint, DexCom provides two separate arguments: (1) the court's order striking the amended complaint in the 05-590 action required Abbott to ask for leave to file a supplemental amendment, and (2) the claims in the present complaint are redundant of the claims made in the complaint filed in the 05-590 case (the "2005 Complaint"). With respect to DexCom's first argument, the court agrees that the proper vehicle to introduce the Group II

Patents into the 05-590 action would have been for Abbott to seek leave of the court under Federal Rule of Civil Procedure 15(d). Nevertheless, nothing in the court's August 16, 2006 Memorandum and Order could be construed as preventing Abbott from seeking relief by filing a new complaint.[3] Thus, the court rejects DexCom's first argument, as it is without merit.

In making its second argument, DexCom relies on Rule 12(f), but does not cite pertinent authority to support its position that the Rule empowers the court to strike Abbott's complaint in the present action because it failed to properly amend its complaint to allege infringement of the Group II patents in the 05-590 action.[4] The Federal Circuit has squarely addressed the particular legal issue involved here – whether a non-merits based dismissal of a patent claim in one action precludes a plaintiff from bringing that same patent claim in a subsequent infringement action – holding that preclusion does not apply. In *Abbey v. Mercedes Benz of North America, Inc.*, 138 Fed. Appx. 304 (Fed. Cir. 2005), the plaintiff filed an amended complaint alleging infringement of a certain patent, which the district court did not consider and dismissed as moot. 138 Fed. Appx. at 306. Subsequently, the plaintiff filed a new action alleging infringement of the same patent. *Id.* The trial court dismissed the new action on res judicata grounds and the plaintiff appealed. The Federal Circuit reversed, holding that claim preclusion did not apply to the patent reasserted in the

---

[3] Indeed, the court did not strike Abbott's complaint on the merits but, rather, because it failed to comply with the requirements of Rule 15(d).

[4] DexCom cites to three cases to support the general rule that two causes of action are duplicative of each other where both are a consequence of one tortious action, *Munie v. Stag Brewery*, 131 F.R.D. 559, 560 (N.D. Ill. 1989), *Davidson v. John Deere & Co.*, 644 F. Supp. 707, 712-13 (N.D. Ind. 1986), and *Rogers v. Mount Union Borough*, 816 F. Supp. 308, 318 (M.D. Pa. 1993). These cases, however, are inapposite to the present case, because they are not patent cases subject to the Federal Circuit's holdings on the issue, which, as will be discussed, are markedly different.

subsequent action, because "[e]ach patent asserted raises an independent and distinct cause of action," and the trial court did not reach the merits of that patent in the first lawsuit. *Id.* at 307 (quoting *Kearns v. General Motors co.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996)).  Given the foregoing, the court concludes that Abbott's current complaint is not duplicative of complaint in the 05-590 action.  Accordingly, the court will deny DexCom's motion to strike Abbott's complaint.

        **B.**        **DexCom's Motion to Consolidate this Action with C.A. No. 05-590**

DexCom next argues that the court should consolidate this action with the 05-590 action. Pursuant to Federal Rule of Civil Procedure 42(a), courts have the authority to consolidate actions involving a common question of law or fact. *Oracle Corp. v EpicRealm Licencing, L.P.*, No. Civ. 06-414, 2007 WL 901543, *5 (D. Del. Mar. 26, 2007).  Decisions to consolidate cases are discretionary, but often courts balance considerations of efficiency, expenses, and fairness. *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 142-43 (D. Del. 1999). The court "[has] broad power . . . to consolidate causes for trial as may facilitate the administration of justice." *EllermanLines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

To support its motion, DexCom argues that "both of Abbott's complaints accuse the same device (DexCom's STS device) of infringing patents which involve closely related subject matter." (D.I. 6, at 14.) DexCom further contends that "the witnesses, documents, and exhibits related to [its] accused device likely will be the same for all seven patents asserted in the two cases." (Id.)  Finally, DexCom relies on Abbott's admission in its opposition to DexCom's motion to strike the amended complaint in the 05-590 action that it "could have filed a new complaint in this jurisdiction at any time, and that the new case would likely have been consolidated with the current case before this court." (05-590 case, D.I. 67, at 6.)

Abbott advances two separate arguments against DexCom's motion to consolidate: the patented technologies in the Group II Patents are very different from the technologies in the Group I Patents, and consolidating this case with the 05-590 action will delay the advancement of the 2005 action. The court is not persuaded and concludes that the cases should be consolidated. First, with respect to the technologies at issue in each case, the court finds that the claimed subject matter of the Group I Patents is very similar to the subject matter of the Group II Patents.[5] Additionally, in each patent action before the court, Abbott alleges that the same DexCom device infringes its patents – the STS device. Moreover, Abbott's admission that a "new case would likely [be] consolidated with the current [05-590] case before this court," (05-590 case, D.I. 67, at 6), supports the court's conclusion that consolidation is warranted. The related technologies at issue in these patents, the fact that all claims of infringement are based on the same device, and that both cases involve the same parties lead the court to conclude that judicial resources likely will be conserved by consolidating these two cases. Thus, the court will grant the motion to consolidate.[6]

### C.   DexCom's Motion to Stay

---

[5] In making this finding, the court determined in to which class the PTO has classified each of the respective Group I and Group II Patents. The PTO classified half of the Group I Patents and all of the Group II into class 600. Moreover, Subclass 345 of Class 600 was used to classify two patents in Group I and two patents in Group II. Based on this evidence, it is clear that the PTO found the technologies in the Group I and Group II Patents related. The PTO's classification of most of the patents into the same Class persuades the court that the Group I and II Patents claim related technologies.

[6] Abbott argues that consolidation will prejudice it, because the Group I Patents are well into the reexamination process, and "the reexamination process will *likely* be finished much sooner than the reexamination[ of the Group II Patents]. . . ." (D.I. 9, at 17) (emphasis added). The court disagrees. Abbott's argument assumes that the Group I Patents will emerge from reexamination first. The court finds that this assumption, however, is not enough to demonstrate prejudice.

Finally, DexCom asks this court to stay this proceeding in light of the reexamination by the PTO. Having determined that consolidation of the two actions is proper, the court must now determine whether to stay the entire proceeding until the PTO completes its reexamination of the Group I Patents, or whether to stay the entire proceeding until the PTO completes its reexamination of all seven patents-in-suit. The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

The thrust of DexCom's argument to support its position that staying this case will not prejudice or present a clear tactical disadvantage to Abbott is, "the stay will conserve the resources of the parties and promote the efficient resolution of this case." (D.I. 6, at 21.) Against this reasoning, Abbott argues that DexCom's purpose for ordering the reexamination of the Group II Patents is to delay the process of this case. To support its argument, Abbott quotes *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920 (M.D.N.C. Dec. 17,

1998), for the proposition that: "Generally, courts are reluctant to stay proceedings where a party is using the reexamination process merely as a dilatory tactic." 1998 WL 1037920, at * 3. Abbott then states, "Here, DexCom is doing just that." (D.I. 9, at 14). The court disagrees and finds the facts and posture of *Remington Arms* easily distinguishable from the present case.

In *Remington Arms*, there was record evidence suggesting to the court that the defendant was aware of uncited prior art during fact discovery, but failed to request a reexamination of the patents-in-suit until well after case dispositive motions by both partied were filed and briefed. 1998 WL 1037920, at * 3. Thus, the court found the defendant's unjustified delay in filing the reexamination the most compelling factor in denying the motion to stay. *Id.* Analyzing the facts, the court held, "[u]nder the circumstances, granting the motion to stay would not be judicially efficient, [because] [d]iscovery has closed, a trial date has been set, and both parties have submitted dispositive motions which are presently pending before the court." *Id.* at * 2. The court ruled that "staying the proceedings would only result in a waste of time and judicial resources, especially at this late stage of the litigation." *Id.* In contrast, in the present case, the court finds no such delay, where the court has not yet conducted a Rule 16(2)(b) scheduling conference, no scheduling Order is in place, no discovery has taken place, and little time has yet to be invested in the litigation. Accordingly, staying these proceedings will save time and judicial resources.

Additionally, staying the present case until the reexamination of the all of the patents-in-suit is complete will facilitate and simplify issues for trial. "One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.* 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Even the *Remington Arms* court noted that it "would surely benefit from the expert opinion of the PTO, and . . . awaiting the outcome of the reexamination process could possibly eliminate the need for trial if the claims are canceled . . . ." 1998 WL 1037920, at *3.

Simply put, given that this case is in its early stages and considering the ability of the PTO to narrow and simplify the issues of this case via the reexamination procedure, the court is convinced that a stay is appropriate. Further, as the accompanying order also consolidates this case with the 05-590 action, the court will stay the consolidated case until all of the Group I and Group II Patents complete reexamination.[7]

## IV. CONCLUSION

For the aforementioned reasons, the court will deny Dexcom's motion to strike the complaint, and grant DexCom's motion to consolidate this case with the 05-590 action and DexCom's motion to stay the proceeding.

Dated: September 30, 2007                 /s/ Gregory M. Sleet
                                          CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

---

[7] The court appreciates Abbott's frustration with the delay associated with completing the reexamination process at the PTO. Nevertheless, Abbott's arguments against staying a case pending reexamination are better directed towards Congress than to this court. Despite more than six pages of argument in its brief (D.I. 9, at 10-17), Abbott fails to articulate any specific undue prejudice or clear tactical disadvantage it would suffer. Nor does Abbott provide any meaningful arguments as to why a stay in this case will not simplify the issues in question.

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT DIABETES CARE, INC.,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>DEXCOM, INC.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)　C.A. No.  06-514 GMS<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendant's Motion to Strike (D.I. 5) is DENIED.

2. The defendant's Motion to Consolidate (D.I. 5) this proceeding with the 05-590 action is GRANTED.

3. The defendant's Motion to Stay (D.I. 5) this proceeding pending the reexamination of the patents in suit is GRANTED.

4. The parties shall notify the court when the PTO issues its reexamination decision on the Group I and Group II Patents.


Dated: September 30, 2007　　　　　　　　/s/ Gregory M. Sleet
　　　　　　　　　　　　　　　　　　　　CHIEF, UNITED STATES DISTRICT JUDGE